UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-22046-GAYLES

JORGE BURILLO AZCARRAGA and
LUZ HOLDINGS PTE. LTD.,
               Plaintiffs,

v.

J.P. MORGAN (SUISSE) S.A.,
J.P. MORGAN SECURITIES LLC, and
JESUS FOMPEROSA PEREA,
               Defendants.
                                      /

## ORDER

**THIS CAUSE** comes before the Court on Plaintiffs Jorge Burillo Azcarraga ("Burillo") and LUZ Holdings Pte. Ltd.'s ("LUZ") Motion to Remand [ECF No. 16]. The Court has carefully reviewed the parties' briefs, the record in this case, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, the motion shall be granted.

**I.    BACKGROUND**

In 2007, Jorge Burillo Azcarraga's family business was sold, upon which he received $84 million, which at that time comprised the vast majority of his financial assets. Compl. ¶ 17. Shortly thereafter, Burillo opened investment accounts with Defendant J.P. Morgan (Suisse) S.A. ("J.P. Morgan (Suisse)") through Defendant Jesus Fomperosa Perea ("Fomperosa") (an employee) and other J.P. Morgan agents, and he deposited nearly the entirety of the $84 million with J.P. Morgan (Suisse) (the "Burillo Accounts"). *Id.* ¶ 18. In or about 2009, J.P. Morgan (Suisse) recommended that Burillo retain another J.P. Morgan entity to establish a trust for him because the trust structure would help with estate planning and asset protection. *Id.* ¶ 23. Burillo then established the Revocable Deed of Trust (the "Burillo Trust") between Burillo, as settlor of the Burillo Trust, and J.P.

1

Morgan Trust Company (New Zealand) Limited (the "Trustee") as trustee of the Burillo Trust. *Id.* ¶ 24. The Trustee then formed LUZ, as an entity wholly owned by the Burillo Trust, to hold the majority of the Burillo Trust assets, and deposited the majority of the Burillo Trust assets into accounts at J.P. Morgan (Suisse) established in LUZ's name (the "LUZ Account"). *Id.* ¶ 25. This lawsuit arises from a dispute about the management of the assets in the Burillo and LUZ Accounts.

The LUZ Account was opened via a J.P. Morgan (Suisse) document titled "APPLICATION FORM TO OPEN AN ACCOUNT RELATIONSHIP FOR LEGAL ENTITY" (the "LUZ Agreement"). Notice of Removal Composite Ex. F [ECF No. 1-7] at 68-71. It is undisputed that an agent of LUZ with authority executed the LUZ Agreement on behalf of LUZ. Under Part III—"AGREEMENT AND SIGNATURES"—the LUZ Agreement provides, in pertinent part:

> **By signing this document, the Client acknowledges that it has received a copy of the *Terms and Conditions Applicable to Clients* of J.P. Morgan (Suisse) SA [the "Bank"] and has read, understood and expressly approves the same (in particular the clauses of the *General Terms and Conditions* relating to the rights of pledge of the Bank, the application of Swiss law and the conferment of jurisdiction on the Courts of the Canton of Geneva, as well as any Special Terms as applicable).**

*Id.* at 71. The *Terms and Conditions Applicable to Clients* (the "*Terms and Conditions*") referenced in this passage is a fifty-plus–page, J.P. Morgan (Suisse)–issued document that is divided into three parts: General Terms and Conditions; Special Terms, which itself is further divided into four subparts (Banking and Custody, Discretionary Investment Management, Dealing and Advisory, and Client Website); and Country Specific Special Terms, which itself is further divided into four subparts (France, Germany, Spain, and Italy). Section 24 of the General Terms and Conditions[1] provides:

> **24.   APPLICABLE LAW AND JURISDICTION**
>
> **24.1   All relations to which these *Terms and Conditions Applicable to Clients* apply shall be governed by Swiss law.**

---

[1] Version E-480-1-11.01—the English version of the document purportedly in use at the time.

> **24.2    The ordinary courts of the Canton of Geneva shall have sole jurisdiction to hear and determine any disputes hereunder, subject to the right of appeal to the Swiss Federal Court in the cases provided for by law. However, [J.P. Morgan (Suisse) SA] shall have the right to institute proceedings before the courts of the Client's habitual place of residence or before any other competent court.**

*Id.* at 12-13.

Burillo opened the Burillo Accounts through two identical J.P. Morgan (Suisse) documents titled "SOLICITUD DE APERTURA DE UNA RELACIÓN DE CUENTA PARA PERSONAS FÍSICAS" [APPLICATION TO OPEN AN ACCOUNT RELATIONSHIP FOR NATURAL PERSONS] (the "Burillo Agreements"). *Id.* at 60-63. Burillo confirms that he executed these documents. Burillo Decl. [ECF No. 16-1] ¶ 7. Under Part III—"ACUERDO Y FIRMAS" [AGREEMENT AND SIGNATURES]—the Burillo Agreements provide (translated into English) in pertinent part:

> **By signing at the bottom of this document, the Client confirms that he/she has received a copy of the J.P. Morgan (Suisse) SA *Conditions Applicable to Client*s, to have read them and expressly approve all its terms (specifically the General Conditions clauses related to the application of Swiss law and the competent jurisdiction of the Geneva District), to the extent that its provisions apply to [the Client's] relationships with the Bank [J.P. Morgan (Suisse) SA].**

[ECF No. 8-2] at 3; *see also* Notice of Removal Composite Ex. F at 63 (original Spanish document). The "*Conditions Applicable to Clients*" [*Condiciones aplicables a los clientes*] referenced in this passage refers to the Spanish version of the same *Terms and Conditions* document referenced in English in the corresponding passage of the LUZ Agreement. Section 24 of the Spanish-language General Conditions [*Condiciones generales*][2] provides (translated into English):

> **24.    APPLICABLE LAW AND JURISDICTION**
>
> **24.1    All relations related to these *Conditions Applicable to Clients* shall be governed by Swiss Law.**
>
> **24.2    In the event of a dispute, only the ordinary courts of the Geneva District shall have competent jurisdiction, without prejudice to the ability**

---

[2]  Version S-480-1-11.01—the Spanish version of the document purportedly in use at the time.

> **of seeking recourse before the Swiss Federal Courts in those cases set forth by law. However, the Bank may initiate legal action before the relevant courts related to the Client's domicile or before any other court with competent jurisdiction.**

[ECF No. 8-1] at 4; *see also* [ECF No. 7-1] at 12 (original Spanish version).

Given that the *Terms and Conditions* document has been translated into several languages, each version contains a section which provides that in the event of inconsistency, the French language version will control. For example, Section 21 of the English General Terms and Conditions states:

> **The original French-language version of the *Terms and Conditions Applicable to Clients*, and of all other basic contractual documents, shall constitute the authoritative version thereof and shall be binding in all respects on the Client. In the event of any inconsistency between the French-language text and any translation thereof into a foreign language, the French text shall prevail and shall be exclusively applicable. The French-language version is available on request.**

Notice of Removal Composite Ex. F at 12. Pertinently, Section 24 of the French-language version of the General Terms and Conditions (the *Conditions générales* of the *Conditions applicables aux clients*)[3] reads (translated into English) as follows:

> **24.   APPLICABLE LAW AND FORUM**
>
> **24.1   All the relationships to which these *Conditions Applicable to Clients* apply are subject to Swiss law.**
>
> **24.2   In case of litigation, the ordinary courts of the Canton of Geneva have sole jurisdiction, subject to appeal to the Swiss Federal Court in the cases provided by law. However, the Bank may take action at the Client's domicile or before any other court with jurisdiction.**

[ECF No. 29-2] at 4; *see also* [ECF No. 29-1] at 130 (original French version).

* * *

The Plaintiffs commenced this action on April 28, 2016, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, asserting state common law claims

---

[3] Version F-480-1-11.01—the French version of the document purportedly in use at the time.

against J.P. Morgan (Suisse), Fomperosa, and Defendant J.P. Morgan Securities LLC ("J.P Morgan Securities") for breach of fiduciary duty, aiding and abetting fiduciary duty, civil conspiracy to commit breach of fiduciary duty, negligence, negligent supervision, negligent misrepresentation and omission, and constructive fraud, arising from the Defendants' alleged mismanagement of the Plaintiffs' assets. Notice of Removal [ECF No. 1] ¶¶ 2-3. Fomperosa, J.P. Morgan Securities, and J.P. Morgan (Suisse) were served on May 6, May 9, and June 2, 2016, respectively. *Id.* ¶¶ 4-5.

J.P. Morgan Securities filed a Notice of Removal (with the consent of Fomperosa and J.P. Morgan (Suisse)) on June 6, 2016. In the Notice, J.P. Morgan Securities admits that there is not complete diversity between all parties, because the Plaintiffs, J.P. Morgan (Suisse), and Fomperosa are all foreign citizens. *See id.* ¶ 1 ("[D]iversity exists between Plaintiffs, on the one hand, and JPMorgan Securities, on the other.").[4] Notwithstanding this lack of complete diversity, J.P. Morgan Securities argues that the Plaintiffs' joinder of J.P. Morgan (Suisse) and Fomperosa as Defendants "is fraudulent as a matter of fact and law because any claims Plaintiffs may seek to assert against

---

[4] As an aside, this Court continues to be confounded by the fact that, despite the Eleventh Circuit's long-standing rule that "for diversity jurisdiction purposes . . . a limited liability company is a citizen of a state of which a member of the company is a citizen," *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004), parties (be they plaintiffs drafting complaints or defendants drafting notices of removal) in every district court in this Circuit habitually fail to properly allege the citizenships of limited liability companies and other unincorporated business entities. *See, e.g.*, *Griggs v. USAA Cas. Ins. Co.*, No. 17-0064, 2017 WL 106015 (N.D. Ga. Jan. 11, 2017); *Gaston v. TAMCO Prop. Mgmt., LLC*, 2017 WL 57342 (N.D. Ala. Jan. 5, 2017); *Tradesmen Int'l, LLC v. JVC Coatings & Fabrication, LLC*, No. 13-0590, 2016 WL 6997068 (S.D. Ala. Nov. 29, 2016); *Prof'l Rev. Recovery Solutions, LLC v. Pillars Recovery, LLC*, No. 16-62656, 2016 WL 7188779 (S.D. Fla. Nov. 14, 2016); *Le Macaron, LLC v. Le Macaron Dev. LLC*, No. 16-0918, 2016 WL 6211718 (M.D. Fla. Oct. 24, 2016); *Those Certain Underwriters at Lloyd's, London, Subscribing to Policy PGIARK02190-02 v. Scott Miller Consulting Eng'r, Inc.*, No. 15-0481, 2016 WL 204478 (M.D. Ala. Jan. 15, 2016); *Bus. Loan Ctr., LLC v. Roland Garros, Inc.*, No. 14-0213, 2015 WL 7776927 (S.D. Ga. Dec. 2, 2015); *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 118 F. Supp. 3d 1302 (N.D. Fla. July 30, 2015); *Branch Banking & Trust Co. v. Greenbriar Estates, LP*, No. 13-0012, 2013 WL 432577 (M.D. Ga. Feb. 1, 2013). J.P. Morgan Securities here joins that regrettably long list of parties by asserting that it "is a Delaware limited liability company with its principal place of business in New York. Thus, for purposes of diversity, it is considered a citizen of Delaware and New York." Notice of Removal ¶ 16. Following the rule in *Rolling Greens*, "[t]o sufficiently allege the citizenships of unincorporated business entities, the removing party ***must list the citizenships of all members of the limited liability company***." *S. Beach Grp. Hotels, Inc. v. James River Ins. Co.*, No. 16-23265, 2016 WL 4157422, at *2 (S.D. Fla. Aug. 5, 2016). The Notice of Removal's allegations regarding J.P. Morgan Securities' citizenship are, therefore, "fatally defective," *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013), and were the Court not already granting the Plaintiffs' motion to remand, it would otherwise have had grounds to remand based on J.P. Morgan Securities' failure to properly allege diversity of citizenship.

5

either of those Defendants must be brought in Geneva, Switzerland, pursuant to the terms of a mandatory forum selection clause governing Plaintiffs' account relationship with JPMorgan Suisse." *Id.*

The Plaintiffs filed the instant motion to remand on July 6, 2016, arguing that this Court does not have subject matter jurisdiction over this action because this action is brought by two non–U.S. citizen Plaintiffs against two non–U.S. citizen Defendants, and the two non–U.S. citizen Defendants (J.P. Morgan (Suisse) and Fomperosa) were not fraudulently joined. The motion has been fully briefed and is ripe for the Court's review.

## II.     LEGAL STANDARD

The statute governing removal, 28 U.S.C. § 1441, permits a defendant to remove most civil cases originally filed in state court to federal court if the federal court can properly exercise federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction exists if the plaintiffs' suit "arises under" the "Constitution, laws, or treaties of the United States," and the issue "must appear on the face of the plaintiff's well-pleaded complaint." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1251 (11th Cir. 2011) (quoting 28 U.S.C. § 1331). Generally, a case "arises under" federal law if federal law creates the cause of action, or if a substantial disputed issue of federal law is a necessary element of a state law claim. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10, 13 (1983). Diversity jurisdiction requires fully diverse citizenship of the parties and an amount in controversy over $75,000, assessed at the time of removal. *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011); *see also* 28 U.S.C. § 1332(a).

Upon removal, 28 U.S.C. § 1447(c) "implicitly recognizes two bases upon which a district court may—and in one case must—order a remand: when there is (1) a lack of subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction." *Hernandez v. Seminole*

*County*, 334 F.3d 1233, 1236-37 (11th Cir. 2003) (citation omitted). If a plaintiff seeks remand on the basis of a lack of subject matter jurisdiction, she may file a motion to remand at any time, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If the plaintiff seeks remand on the basis of any other defect, she must file a motion to remand within thirty days after the filing of the notice of removal. *Id.* "The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction," *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012), and it bears the burden of demonstrating that removal is proper, *see Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

A district court considering a motion to remand "has before it only the limited universe of evidence available when the motion to remand is filed—*i.e.*, the notice of removal and accompanying documents," *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213-14 (11th Cir. 2007) (footnote omitted), although the court "when necessary [may] consider post-removal evidence in assessing removal jurisdiction," such as "to establish facts present at the time of removal," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 773 (11th Cir. 2010) (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 946, 949 (11th Cir. 2000)). If that evidence is insufficient to establish the propriety of removal, "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Lowery*, 483 F.3d at 1214-15. The district court is required to "'strictly construe the right to remove' and apply a general 'presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal punctuation marks omitted) (quoting *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001)). That said, it must be "equally vigilant" in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction. *Pretka*, 608 F.3d at 766.

7

### III. DISCUSSION

"Alienage jurisdiction is a form of diversity jurisdiction under which federal courts may hear cases between 'citizens of a State and citizens or subjects of a foreign state.'" *Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) (quoting 28 U.S.C. § 1332(a)(2)). "Like the complete diversity rule in cases between citizens of different states, alienage jurisdiction prohibits an alien from suing another alien in federal court unless the suit includes United States citizens as plaintiffs and defendants." *Id.* (citation omitted); *see also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides."). While one of the Defendants (J.P. Morgan Securities) is a United States citizen, the Plaintiffs, Fomperosa, and J.P. Morgan (Suisse) are not; so, facially, alienage jurisdiction does not exist.

That said, the judicially created doctrine of fraudulent joinder provides an exception to the requirement of complete diversity (or, as in this case, alienage). *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under this doctrine, "[w]hen a plaintiff names a non-diverse defendant or resident defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). In such a case, the plaintiff is said to have "fraudulently joined" the non-diverse defendant. *Id.* To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the non-diverse (or alien) defendants; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the non-diverse (or alien) defendants into state court. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam).

8

The Defendants here seek to establish fraudulent joinder through the first theory: they argue that there is no possibility that Burillo and LUZ can establish a cause of action against J.P. Morgan (Suisse) and Fomperosa, because the forum selection clause contained in the Burillo and LUZ Agreements mandates that disputes arising under the Agreements must be brought in Switzerland. Should the Court disregard the joinder of J.P. Morgan (Suisse) and Fomperosa as fraudulent, alienage jurisdiction would then exist because the relevant parties would be foreign citizens or subjects on one side and a U.S. citizen on the other. A district court makes the determination regarding fraudulent joinder on the basis of the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "[A]ll that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (quoting *Triggs*, 154 F.3d at 1287). To determine whether a plaintiff could do so, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538.

Under Florida law, mandatory forum selection clauses "should be enforced in the absence of a showing that enforcement would be unreasonable or unjust." *Manrique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986). "A mandatory forum selection clause is identified by 'exclusive' language and 'must be honored by the trial court in the absence of a showing that the clause is unreasonable or unjust.'" *R.S.B. Ventures, Inc. v. Berlowitz*, 201 So. 3d 719, 720-21 (Fla. 4th DCA 2016) (quoting *Michaluk v. Credorax (USA), Inc.*, 164 So. 3d 719, 722-23 (Fla. 3d DCA 2015)); *see also Allstate Fire & Cas. Ins. Co. v. Hradecky*, — So. 3d —, 2016 WL 6249155, at *3 (Fla. 3d DCA Oct. 26, 2016) ("Whether a forum selection clause is mandatory or permissive depends on language indicat-

9

ing exclusivity. If the forum selection clause states that any litigation must or shall be initiated in a specified forum, the clause is mandatory. Absent such language, the clause is permissive." (citation omitted)); *Golden Palm Hosp. Inc. v. Stearns Bank Nat'l Ass'n*, 874 So. 2d 1231, 1237 (Fla. 5th DCA 2004) (finding that use of the word "shall" in the documents is "indicative of a mandatory provision rather than one that is permissive").

"To evade enforcement of a mandatory forum selection clause, the contractually agreed upon venue must be 'unreasonable or unjust.'" *R.S.B. Ventures*, 201 So. 3d at 721 (quoting *Farmers Grp., Inc. v. Madio & Co.*, 869 So. 2d 581, 582 (Fla. 4th DCA 2004)). Absent argument or record evidence establishing the unreasonableness or unjustness of the forum selection clause, a court cannot find that the clause is invalid. *Taurus v. Stornoway Invs., LLC v. Kerley*, 38 So. 3d 840, 843 (Fla. 1st DCA 2010). "[I]t is not enough to merely 'show that litigation in [another forum] would result in additional expense or inconvenience.'" *R.S.B. Ventures*, 201 So. 3d at 721 (quoting *Farmers Grp.*, 869 So. 2d at 583)).

While the Defendants offer much in the way of argument that the forum selection clause in the Agreements precludes the possibility that the Plaintiffs can recover against J.P. Morgan (Suisse) and Fomperosa in Florida state court, that argument would require the Court to go beyond the permissible scope of the fraudulent joinder analysis to make the determination that J.P. Morgan (Suisse) and Fomperosa were fraudulently joined. The Defendants have implored the Court to determine (1) which forum selection clause applies; (2) whether the language of any applicable forum selection clause is mandatory or permissive; (3) if the forum selection clause is mandatory, whether there exists record evidence establishing the unreasonableness or unjustness of the forum selection clause; and (4) if there is no such record evidence, whether the forum selection clause can be invoked by Fomperosa (a non-signatory to the Burillo and LUZ Agreements). The Eleventh Circuit has warned against district courts making findings of fraudulent joinder where the district

10

court must make legal and factual determinations in order to do so. *See Henderson*, 454 F.3d at 1282; *cf. Clear Channel Commc'ns, Inc. v. Citigroup Global Markets, Inc.*, 541 F. Supp. 2d 874, 879 & n.3 (W.D. Tex. 2008) (declining to find fraudulent joinder in a case involving a forum selection clause and distinguishing the case from those involving statutes of limitation, "in which the time that the cause of action accrued is generally discernible from the pleadings themselves"). Indeed, most of the Eleventh Circuit fraudulent joinder cases cited by the parties turn on the simple question of whether the plaintiff's allegations could possibly state a claim under substantive law. *See, e.g.*, *Stillwell*, 663 F.3d at 1332-35 (deciding whether the plaintiff possibly stated a claim under Georgia law against insurance agent for failing to procure adequate insurance coverage); *Henderson*, 454 F.3d at 1281-84 (deciding whether the defendants had proven that no Alabama court could possibly find the plaintiff's complaint sufficient to invoke Alabama statute of limitations tolling statute); *Pacheco de Perez*, 139 F.3d at 1380-81 (11th Cir. 1998) (deciding whether the plaintiff possibly stated a claim under Venezuelan law for negligence); *Crowe*, 113 F.3d at 1539-42 (deciding whether the plaintiff possibly stated a claim under Georgia law for nuisance). The Defendants have provided no authority that would permit this Court to make the prerequisite legal and factual determinations regarding the identity, applicability, and enforceability of the forum selection clauses that would be necessary for a finding that the Defendants have been fraudulently joined. In the absence of such authority, the Court rejects the Defendants' invitation to create it.

In the context of fraudulent joinder, a district court's "authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims . . . . [T]he district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent." *Crowe*, 113 F.3d at 1542. The Defendants have not argued that the Plaintiffs are ***substantively*** unable to state claims, so they concede that the Plaintiffs' claims are not fraudulent or frivolous on their face. And because the Defendants have failed to

11

persuade on their sole argument that, procedurally, the Plaintiffs are precluded from bringing a cause of action by any forum selection clause, the Court finds that they have failed to prove by clear and convincing evidence that there is no *possibility* that the Plaintiffs could establish a cause of action against J.P. Morgan (Suisse) or Fomperosa. The upshot of that failure is that the Court cannot find that either J.P. Morgan (Suisse) or Fomperosa were fraudulently joined. The case, therefore, must be remanded.[5]

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Remand [ECF No. 16] is **GRANTED**. This action is **REMANDED** in its entirety to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of February, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[5] The Court is aware that J.P. Morgan (Suisse) and Fomperosa filed a motion to dismiss on the basis of *forum non conveniens* [ECF No. 13] and a motion asking the Court to rule on the *forum non conveniens* motion prior to consideration of the motion to remand [ECF No. 41], and it is equally aware that the Supreme Court has instructed that

> a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) . . . if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). However, *Sinochem* also states that

> If, however, a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction "will involve no arduous inquiry" and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum "should impel the federal court to dispose of [those] issue[s] first."

*Id.* at 436. (alterations in original) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999)). This Court has properly taken the less burdensome course in resolving the Plaintiffs' motion to remand first: the lack of subject matter jurisdiction was not difficult to determine, and it cannot be said that any *forum non conveniens* considerations weighed heavily (if at all) in favor of dismissal. *Cf. id.* ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").